**STATE of Tennessee, Appellee,**

v.

**Thomas David WINE, Appellant.**

Court of Criminal Appeals of Tennessee, at Knoxville.

Dec. 7, 1989.

Permission to Appeal Denied by Supreme Court March 5, 1990.

---

**7.** *Allen v. U.S.*, 164 U.S. 492, 17 S.Ct. 154, 41    L.Ed. 528 (1896).

**32**

Robert C. Newton, Bristol, for appellant.

Charles W. Burson, Atty. Gen. and Reporter, Amy L. Tarkington, Asst. Atty. Gen., Nashville, Carl K. Kirkpatrick, Dist. Atty. Gen., and Paul Laymon, Asst. Dist. Atty. Gen., Blountville, for State.

## OPINION

WADE, Judge.

The defendant, Thomas David Wine, appeals his convictions for possession of less than 30 grams of cocaine with intent to deliver, possession of marijuana and unlawful possession of drug paraphernalia.

A Range II offender, he received concurrent sentences of 10 years and a fine of $15,000.00 for the felony offense and 11 months, 29 days and fines of $1,000.00 for each misdemeanor.

In addition to a challenge to the sufficiency of the evidence, the defendant contests the admission of evidence seized as a result of a search of his residence.

We find no error and affirm the judgment of the trial court.

At the suppression hearing, Noberto Ferro, a loss prevention supervisor with United Parcel Service (UPS) in Dade County, Florida, testified that he made a random inspection of a package addressed to the defendant at his Bristol, Tennessee residence.[1]

When Ferro opened the sealed, padded envelope, he discovered that it contained a white substance he identified as cocaine. Detective Debbie Hegele of the Metro Dade Sheriff's Department was called to investigate, tested the contents, and determined that the substance was, in fact, cocaine. Detective Hegele contacted authorities in Bristol who arranged the issuance of a search warrant for the defendant's residence. The affidavit provided as follows:

On January 21, 1988, affiant was telephonically contacted by Detective Debbra Hegle [sic], an investigator for the Dade County Florida Metro Narcotics Squad. Detective Hegle advised that on January 20, 1988 UPS in Miami, Florida opened a box that was suspected to contain controlled substances. Said box was being shipped by UPS with the shipper being Andy Roe, 122 Fowler Avenue, Tampa, Florida, and being shipped to David Wine, 2441 Windsor Avenue, Bristol, Tennessee. Said box bears UPS shipping number 361X79 and UPS tracking number 1437294457. Detective Hegle advised she field tested the contents of the box and determined it to be cocaine and it appeared to be in excess of 30 grams. Affiant is aware that the above described package is to be delivered to the above described address on January 22, 1988. Affiant personally knows Thomas David Wine, alias Tommy and affiant personally knows that Thomas David Wine resides at 2441 Windsor Avenue, Bristol, Tennessee. Affiant further knows Thomas David Wine to have a reputation as a drug dealer in the Bristol area and that he has had such reputation for at least eight years.

Upon obtaining the magistrate's authorization to search, Captain Eddie Wampler of the Bristol Police Department set up a con-

---

1. The company's policy directs random inspection by employees to assure that items are accurately labeled and have not been damaged.

trolled delivery of the cocaine. A Sullivan County detective, driving a UPS truck and dressed in a UPS uniform, took the package to defendant's house. The defendant answered the door, signed a receipt, and accepted delivery. He was then placed under arrest.

Afterwards, a "sweep team" found 27.5 grams of cocaine hidden in a compact disk case in the defendant's stereo cabinet. Officers located $1,100.00 in cash in a pair of defendant's pants. Small amounts of marijuana were stored in various places in his residence. Records, papers, telephone bills, and "drug paraphernalia" were also seized.

I

The defendant does not challenge the search conducted by Detective Hegele in the UPS office. *See United States v. Jacobsen*, 466 U.S. 109, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984). Instead, he contests the search of his residence. The issue, therefore, is whether the warrant establishes probable illegal activity in the defendant's residence following delivery of the package.

■ Our Supreme Court has embraced the use of "anticipatory search warrants." *State v. Coker*, 746 S.W.2d 167, 172 (Tenn. 1987).[2] Such warrants do not violate the fourth amendment if they are executed following delivery of the contraband. *See* 2 W. LaFave *Search and Seizure*, § 3.7(c) at 96 (2nd Ed.1987). The affidavit should inform the magistrate that the known or suspected contraband will be delivered in the immediate future and the basis for the affiant's knowledge that the item will be delivered. *See United States v. Outland*, 476 F.2d 581 (6th Cir.1973). Following the delivery of the illegal substance, the warrant ripens and the search may proceed. While it is not crucial to the validity of this search, it is generally preferable that the

warrant explicitly condition execution upon the occurrence of a specified event. One authority comments as follows:

[I]t would probably suffice if the judge issuing the warrant deleted the standard command that the warrant be executed forthwith and inserted instead a directive that the warrant may be executed only upon the occurrence of a specified event.

LaFave, § 3.7(c) at 99; *see also United States v. Garcia*, 882 F.2d 699, 703–4 (2nd Cir.1989).

■ Applying these guidelines to the present case, we must uphold the search. The warrant describes why the affiant knew about the contents of the package and how and when it was to be delivered to the defendant. The affiant was entitled to rely upon Detective Hegele's statements. "Observations of fellow officers of the Government engaged in a common investigation are plainly a reliable basis for a warrant applied for by one of their number." *United States v. Ventresca*, 380 U.S. 102, 111, 85 S.Ct. 741, 747, 13 L.Ed.2d 684 (1965). The same rule applies to information from out-of-state officers. *See Vermilye v. State*, 584 S.W.2d 226, 230 (Tenn. Crim.App.1979).

■ While it may have been better practice for the warrant to have been issued conditioned on the delivery of the package to the defendant, because the search warrant was not executed until after the defendant formally accepted delivery of the package containing the cocaine, the warrant's silence on this point is not error. *See Alvidres v. Superior Court*, 12 Cal. App.3d 575, 90 Cal.Rptr. 682, 686 (1970).[3]

This issue is without merit.

II

■ The defendant also argues that the evidence is insufficient to support his con-

---

**2.** Anticipatory search warrants are issued based on probable cause to believe that evidence of illegal activity will be found at a particular place at a time in the future, rather than probable cause to believe evidence is to be found at the time the search warrant issues. *See* LaFave, § 3.7(c).

**3.** As the California court recognized, we would be faced with a different issue if the warrant had been executed before the defendant took custody of the cocaine. 90 Cal.Rptr. at 686.

viction for possession of cocaine with intent to deliver. He specifically contends that, because no witness testified that cocaine is a Schedule II drug, there is no evidence that his possession of cocaine violated the law.

This court specifically rejected this argument in *Hayes v. State*, 513 S.W.2d 144 (Tenn.Crim.App.1974):

Methadone is a Schedule II drug as a matter of law. It was not necessary for the state to prove that methadone is a Schedule II drug as contended by the defendant.

*Id.* at 145.

We believe the same rationale applies to cocaine. This issue is also without merit.

Accordingly, the defendant's conviction is affirmed.

DUNCAN, P.J., and BYERS, J., concur.